NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOMINICK JUNO, EXECUTOR OF THE ESTATE OF WILLIAM H. SUTTON, <br><br> Plaintiff, <br><br> vs. <br><br> VERIZON COMMUNICATIONS, INC., FIDELITY EMPLOYER SERVICES COMPANY, L.L.C., VICTORIA ARIAS SUTTON, and ELIZABETH SUTTON, <br><br> Defendants. | Civil Action No.: 10-1288 (PGS) <br><br> **MEMORANDUM & ORDER** |

This action involves claims by multiple parties. Plaintiff Dominick Juno ("Executor"), in his capacity as Executor of the Estate of William H. Sutton (Estate) has filed a Complaint (Estate's Complaint) seeking payment of the proceeds of a 401(k) account held by William H. Sutton (William) at the time of his death. Defendant Victoria Arias Sutton (Victoria) has filed a Verified Complaint (Verified Complaint), alleging that the Last Will and Testament of William should be declared null and void. Both Complaints were later removed to this Court. Thereafter, Defendant Elizabeth Sutton (Elizabeth), was joined in this action.

Presently before this Court are two motions to dismiss: (1) Defendant Verizon Communications, Inc. (Verizon) and Fidelity Employer Services Company, L.L.C. (Fidelity) have moved to dismiss the Estate's Complaint, and (2) the Executor has moved to dismiss Victoria's Verified Complaint.

1

## I.

According to the allegations in the Estate's Complaint, William was a participant in a 401(k) savings plan (Savings Plan) by virtue of his employment with Verizon. The Savings Plan's records include a beneficiary designation, dated December 7, 1978, in which William designated his wife Victoria as his primary beneficiary.

On November 6, 2002, William and Victoria were divorced. Pursuant to the judgment of divorce, William and Victoria "each released the other from any claim to any property of the other, except as provided in the judgment of divorce." The supplemental divorce judgment, dated July 1, 2003, included a provision under which William was to provide Victoria with fifty percent of the value of the Savings Plan pursuant to a Qualified Domestic Relations Order (QDRO). On March 29, 2004, the Superior Court of New Jersey for Morris County, entered a Domestic Relations Order, which named Victoria as an alternate payee for fifty percent of the Savings Plan. On July 16, 2004, the Plan Administrator of the Savings Plan issued a QDRO Qualification Notice. The notice apprised William that the Domestic Relations Order was "determined to be a Qualified Domestic Relations Order" and that "[p]ursuant to the QDRO, the alternate payee has been awarded a portion of the plan participant's benefits." William never rescinded or changed his beneficiary designation under the Savings Plan after his divorce from Victoria. Thus, at the time of William's death, on October 31, 2009, the only beneficiary designation on file with the Savings Plan Administrator was the beneficiary designation made in 1978.

On February 8, 2010, the Estate commenced this action by filing a complaint in the Chancery Division of the Superior Court of New Jersey for Morris County. The Estate's Complaint names as Defendants Verizon, which is the sponsor of the Savings Plan; Fidelity, which provides directed

recordkeeping and administrative services to the Savings Plan; and Victoria, who is William's designated beneficiary under the Savings Plan. In addition to alleging that William inadvertently failed to change his beneficiary of the Savings Plan, the Estate's Complaint alleges that N.J.S.A. 3B:3-14(a) automatically extinguished William's pre-divorce designation of Victoria as beneficiary. The Estate requests that the Court enter judgment: (1) directing Verizon and Fidelity to account for the Savings Plan proceeds; (2) reforming the Savings Plan beneficiary designation and declaring the Estate entitled to the Savings Plan proceeds; and (3) directing Verizon and Fidelity to disburse the Verizon Savings Plan proceeds to the Estate of William H. Sutton.

On February 25, 2010, Victoria filed a Verified Complaint in support of an order to show cause with the Chancery Division of the Superior Court of New Jersey for Morris County, asserting that William's Last Will and Testament should be set aside. On March 10, 2010, Verizon and Fidelity removed both actions to this Court on the basis of federal question jurisdiction under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. Simultaneously, the Administrator of the Savings Plan commenced a separate interpleader action, naming the Estate and Victoria as defendants. *See Verizon Employee Benefits Committee v. Dominick Juno, Executor of the Estate of William H. Sutton and Victoria Arias Sutton*, No. 10-1246 (PGS-ES). On February 18, 2011, by Consent Order, Elizabeth was joined in this action and the interpleader action.[1]

---

[1] The Court has limited its presentation of the facts to primarily the allegations in the Estate's Complaint.

## II.

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a 12(b)(6) motion to dismiss, the Court must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard requires that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 55 U.S. at 555). When evaluating a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

The Court notes that the parties submitted affidavits with both motions, which present facts beyond the allegations in the Complaints. Because the parties indicated to the Court that there was no need for discovery before disposition of the instant motions and because the parties did not wish to convert the instant motions into ones for summary judgment, the Court's decision is based on only the allegations in the Complaints and the documents that form the bases of the claims.

...

### III.

The Court will first address Verizon and Fidelity's[2] motion to dismiss the Estate's Complaint.[3] The Estate's Complaint appears to be based on two principal theories. First, the Estate asserts the judgment of divorce equitably distributed all of the assets and liabilities between William and released each other from any claim to the property of the other. Second, the Estate alleges that the pre-divorce designation of Victoria as the beneficiary of the Savings Plan was extinguished by virtue of N.J.S.A. 3B:3-14(a).[4] Verizon asserts that neither of those legal theories state a claim upon which relief can be granted.

Considering the Estate's first legal theory, Verizon argues that the judgment of divorce has no effect on the Saving Plan's obligation to distribute the remaining balance of William's account in accordance with the Savings Plan's documents and William's beneficiary designation. The Estate agrees that the account should be distributed according to Savings Plan documents, but asserts that such requires consideration of the QDRO. The Estate maintains that because the QDRO incorporates New Jersey law, N.J.S.A. 3B:3-14(a) operates to effectively terminate William's designation of Victoria as the Savings Plan beneficiary.

---

[2] For ease of reference, the Court will refer to Verizon and Fidelity as Verizon.

[3] Victoria filed a letter memorandum, joining in support of Verizon's motion to dismiss the Estate's Complaint.

[4] While Verizon's motion to dismiss was pending, the Estate advised the Court of a document, which appears to show that Victoria waived her interest in a survivor benefit in the Verizon Pension Plan for Mid-Atlantic Associates. Such a document does not form the basis of the Estate's claim as it is unrelated to the 401(k). Therefore, such document shall have no bearing on the outcome of Verizon's motion to dismiss.

The parties dispute whether this case is governed by the United States Supreme Court's recent decision in *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 129 S. Ct. 865 (2009). In *Kennedy*, the decedent participated in a savings and investment plan governed by ERISA. *Id.* at 868. The decedent had designated his wife as beneficiary of the plan, but subsequently divorced her. *Id.* at 869. The divorce decree divested the wife of any interest in the proceeds of any retirement or pension plan arising from the decedent's employment. *Id.* The decedent, however, did not change his beneficiary after his divorce. *Id.* Upon the decedent's death, the plan administrator distributed the funds of the savings and investment plan in accordance with the decedent's beneficiary designation. *Id.* The decedent's estate sued, "claiming that the divorce decree amounted to a waiver of the . . . benefits on [the wife's] part." *Id.* at 869.

The Supreme Court held that although the divorce decree was valid, it did not operate as an ERISA waiver because "[t]he plan administrator [was] obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provision of [ERISA]." *Id.* at 874-85. Thus, the Court stated that the claims of the decedent's estate stood or fell by "the terms of the plan" because ERISA was intended to ensure "a straightforward rule of hewing to the directives of the plan documents that lets employers establish a uniform administrative scheme, with a set of standard procedures to guide processing of claims and disbursement of benefits." *Id.* at 875 (internal quotation marks and citations omitted). "The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule." *Id.* at 875-76. Generally, less certain rules would force plan administrators "to examine a multitude of external documents that might

purport to affect the dispensation of benefits . . . and be drawn into litigation like this over the meaning and enforceability of purported waivers." *Id.* (internal quotations and citations omitted)).

The Supreme Court noted, however, that a plan administrator must look outside the plan documents to enforce a QDRO:

> The very enforce-ability of QDROs means that sometimes a plan administrator must look for the beneficiaries outside plan documents notwithstanding § 1104(a)(1)(D); § 1056(d)(3)(J) provides that a person who is an alternate payee under a QDRO shall be considered for purposes of any provision of ERISA a beneficiary under the plan. But this in effect means that a plan administrator who enforces a QDRO must be said to enforce plan documents, not ignore them. In any case, a QDRO enquiry is relatively discrete, given the specific and objective criteria for a domestic relations order that qualifies as a QDRO, requirements that amount to a statutory checklist working to spare an administrator from litigation-formenting ambiguities. This is a far cry from asking a plan administrator to figure out whether a claimed federal common law waiver was knowing and voluntary, whether its language addressed the particular benefits at issue, and so forth, on into factually complex and subjective determinations.

*Id.* at 876 (internal quotation marks, citations, and footnotes omitted).

Turning to the facts of this case, the language of the Domestic Relations Order states that Victoria was to be named an alternate payee and that "[s]ubsequent to the date the Plan Administrator determines [the] Domestic Relations Order is Qualified, the Alternate Payee shall be assigned an amount equal to 50% of the Participant's total vested Account balance under the Plan . . ." In a letter to William, dated July 16, 2004, the Plan Administrator advised that the Domestic Relations Order met the standards necessary to be deemed a QDRO under ERISA. In addition, the Plan Administrator advised: "Pursuant to the QDRO, the alternate payee has been awarded a portion of the plan participant's benefits." The Plan Administrator also outlined the administration of

benefits, indicating that "[t]he alternate payee is awarded 50% of the participant's vested account balance . . ." Such facts clearly evidence that under the QDRO Victoria is the alternate payee of fifty percent of the Savings Plan. But, the QDRO is silent with respect to the remaining balance of the Savings Plan.

The Court is persuaded that *Kennedy* controls the disposition of the remaining balance of the Savings Plan. Pursuant to *Kennedy*, the Plan Administrator must distribute the remaining fifty percent of the Savings Plan "in accordance with the documents and instruments governing the plan," *id.* at 875, and should not look to the QDRO to divine any expression of William's intent as to the distribution of the balance of the Savings Plan. *See id.* at 875-76. Looking to the language of the Savings Plan, Section 17 pertains to the "Designation of Beneficiaries." Specifically, section 17.1 provides for "Lump Sum Payable Upon Death," stating that "upon the death of a Participating Employee or Inactive Participant, the vested balance of his or her Accounts shall be paid to the Beneficiary or Beneficiaries most recently designated by the deceased in a lump sum." The parties concede that Victoria is the named beneficiary on the designation form completed by William in 1978; thus, the Plan Administrator may distribute the balance of the Savings Plan to Victoria.[5]

---

[5] In her opposition to Verizon's motion to dismiss, Elizabeth argued that the balance of the account should be paid into the Estate pursuant to Section 17.1. Section 17.1 states that "[w]hen there is any question regarding the legal right of any person to receive a distribution under the Plan, the amount in question *may* be paid to the participant's estate." (emphasis added). Such language is permissive, permitting the Plan Administrator to take such a course of action; however, it does not mandate that the Plan Administrator take such a course.

Further, Victoria requests that the Court place the funds of the Savings Plan into a constructive trust. However, the Court declines to take such action in light of Victoria's assertion that if the Court granted Verizon's motion to dismiss, New Jersey law would apply to revoke Victoria's interest in the account.

Considering the Estate's second legal theory – that N.J.S.A. 3B:3-14(a) revokes William's designation of Victoria as a beneficiary – the Court concludes that such an argument is a non-starter. N.J.S.A. 3B:3-14(a) provides as follows:

> Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, a divorce or annulment:
> (1) revokes any revocable:
>
> (a) dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse;
>
> . . .
>
> . . .
>
> In the event of a divorce or annulment, provisions of a governing instrument are given effect as if the former spouse and relatives of the former spouse disclaimed all provisions revoked by this section . . . . If provisions are revoked solely by this section, they are revived by the divorced individual's remarriage to the former spouse or by the revocation, suspension or nullification of the divorce or annulment. No change of circumstances other than as described in this section and in N.J.S.A. 3B:7-1 effects a revocation or severance.

The Court has determined that ERISA mandates that the Plan Administrator look to the documents and instruments governing the plan, not to the QDRO, when distributing the balance of the Savings Plan. Thus, ERISA governs the outcome of this case. Because ERISA broadly preempts "all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA, ERISA preempts any application of N.J.S.A. 3B:3-14(a). 29 U.S.C. § 1144(a); *see also Egelhoff v. Egelhoff*, 532 U.S. 141 (2001); *In re Kensinger*, No. 09-6510, 2010 U.S. Dist. LEXIS 116078, *5-6 n.1 (D.N.J. Nov. 1, 2010) (noting parties conceded ERISA preempts N.J.S.A. 3B:3-14).

Therefore, IT IS on this 31st day of March 2011, **ORDERED** that Verizon's motion to dismiss is granted (ECF No. 3.); and

IT IS **FURTHER ORDERED** that the Estate's Complaint is dismissed; and

IT IS **FURTHER ORDERED** that the Court declines to exercise jurisdiction over the Verified Complaint and remands the Verified Complaint back to the Chancery Division - Probate Part of the Superior Court of New Jersey for Morris County; and

IT IS **FURTHER ORDERED** that the Estate's motion to dismiss the Verified Complaint is rendered moot (ECF No. 14.); and

IT IS **FURTHER ORDERED** that the Clerk shall dismiss this case.

_____
PETER G. SHERIDAN, U.S.D.J.

March 31, 2011